# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

GARRY WAYNE WILSON,

      Petitioner,

v.

CARRIE BRIDGES, Warden,[1]

      Respondent.

Case No. 21-CV-0445-JFH-SH

## OPINION AND ORDER

This matter is before the Court on Petitioner Garry Wayne Wilson's ("Wilson") Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed October 14, 2021 ("Petition") [Dkt. No. 1] and Wilson's two-part Motion to Supplement/Amend Habeas Corpus 2254 [and] Motion for Counsel filed April 5, 2023 ("Motion") [Dkt. No. 18]. Wilson brings the Petition to challenge the constitutional validity of the criminal judgment entered against him in Tulsa County District Court Case No. CF-2016-5198. Wilson claims he is unlawfully detained in state custody under that judgment because he is Indian, he committed murder in Indian country, and he therefore should have been prosecuted in federal court, under the Major Crimes Act, 18 U.S.C. § 1153. In the Motion, Wilson seeks leave to add new factual allegations to support this claim, requests appointment of counsel, and requests an evidentiary hearing. On consideration of the record, the parties' arguments, and applicable law, the Court DENIES the Motion and DENIES the Petition.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Carrie Bridges, Warden, in place of Scott Nunn as party Respondent. *See* Dkt. No. 19 at 1 n.1 (identifying Bridges as current warden of the state prison where Wilson is confined). The Clerk of Court shall note on the record this substitution.

**BACKGROUND**

In 2017, a Tulsa County jury found Wilson guilty of first-degree murder, in violation of

Okla. Stat. tit. 21, § 701.7, and possession of a firearm while under the supervision of the

Department of Corrections, in violation of Okla. Stat. tit. 21, § 1283(C).  Dkt. No. 13-1 at 1; Dkt.

No. 14-7 at 72-73.[2]  Both offenses arose from Wilson's fatal shooting of Terrel Demond Smith in

2016.  Dkt. No. 13 at 8-14.  The trial court imposed the sentences recommended by the jury—life

imprisonment for the murder conviction and ten years' imprisonment for the firearm conviction—

and ordered that the sentences be served consecutively.  Dkt. No. 13-1 at 1-2.  The Oklahoma

Court of Criminal Appeals ("OCCA") affirmed Wilson's judgment and sentence in May 2019.  *Id.*

at 1-14.  Wilson did not file a petition for writ of certiorari in the United States Supreme Court to

seek further direct review.  Dkt. No. 1 at 3.  Wilson did, however, seek postconviction relief in

state court through several applications for postconviction relief.  *See* Dkt. 13 at 2-7 (detailing state

postconviction proceedings).

As relevant to this proceeding, Wilson filed his first application for postconviction relief

in state district court in July 2019.  Dkt. No. 13-4.  In that application, Wilson claimed he was

convicted in violation of his federal and state constitutional rights to due process and in violation

of the United States Supremacy Clause.  *Id.* at 2.  He argued that the "[t]rial court did not have

jurisdiction in that [Wilson] and the victim are Indians within the meaning of federal law and the

crime occurred in Indian Count[r]y as defined by 18 U.S.C. § 1151."  *Id.*  Wilson also argued that

the Major Crimes Act, 18 U.S.C. § 1153, provides the federal government with exclusive

jurisdiction to prosecute Indian defendants who commit enumerated offenses, including murder,

within Indian country.  *Id.* at 3.  As factual support for his claim, Wilson alleged that he is a member

---

[2]  For consistency, the Court's citations refer to the CM/ECF header pagination.

of the Cherokee Nation, that he was convicted of crimes that occurred within the boundaries of the Cherokee Nation Reservation, that the Cherokee Nation Reservation has not been disestablished or diminished since the boundaries were established through the 1866 Treaty of Washington, and that the crimes also occurred on "a tract of land that is part of an Indian allotment or trust land within the meaning of 18 U.S.C. § 1151(c)." *Id.* at 2-3. Wilson submitted with his application an identification card showing that he is a "certified Citizen of the Cherokee Nation" and that his card was approved on September 25, 2018. *Id.* at 6.

The state district court dismissed Wilson's first application for postconviction relief in September 2019. Dkt. No. 13-6. Applying federal law, the state district court stated that "[t]he Major Crimes Act, 18 U.S.C. § 1153, creates federal jurisdiction over thirteen major crimes committed by Indians in Indian Country, regardless of whether the victims are Indian or non-Indian" and that "[t]he General Crimes Act, 18 U.S.C. § 1152, precludes tribal jurisdiction over non-Indians." *Id.* at 2. Applying the two-part test described in *United States v. Prentiss*, 273 F.3d 1277 (10th Cir. 2001), the state district court concluded that Wilson's "claim of membership to the Cherokee Nation is facially insufficient to avail himself of tribal or federal jurisdiction" because Wilson "fail[ed] to assert or indicate in anyway the necessary requirement of having Indian blood." *Id.* at 3; *see Prentiss*, 273 F.3d at 1280 ("We have concluded that, '[f]or a criminal defendant to be subject to [federal prosecution under 18 U.S.C.] § 1153, the court must make factual findings that the defendant "(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government."'"). The state district court further found that Wilson did not "demonstrate the existence of a Cherokee Reservation" or that he committed his crime on "a tract of land that is part of an Indian allotment or trust land." *Id.* at 4-5.

Wilson filed a postconviction appeal (Case No. PC-2019-670), and the OCCA affirmed the

district court's decision in March 2020. Dkt. No. 13-8. The OCCA reasoned that Wilson waived his claim challenging the trial court's jurisdiction because that claim "could have and should have been raised in his direct appeal." *Id.* at 2. Alternatively, the OCCA reasoned that the state constitution provides state district courts with "unlimited original jurisdiction of all justiciable matters" and that Wilson "cite[d] no controlling authority that establishes the District Court lacked jurisdiction in [Wilson's] case." *Id.* Wilson filed a petition for writ of certiorari in the United States Supreme Court on March 27, 2020. Dkt. No. 13-9 at 1.

About four months later, while Wilson's petition for writ of certiorari was pending, the Supreme Court issued two decisions relevant to Wilson's claim that the State of Oklahoma improperly exercised criminal jurisdiction over his prosecution—*McGirt v. Oklahoma*, 591 U.S. ___, 140 S. Ct. 2452 (2020), and *Sharp v Murphy*, 140 S. Ct. 2412 (2020) (Mem.). *McGirt* reached the Supreme Court via a petition for writ of certiorari filed by a state prisoner who, like Wilson, sought review of the OCCA's decision denying his application for postconviction relief. *See McGirt v. Oklahoma*, 140 S. Ct. 659 (2019) (Mem.) (granting petition for writ of certiorari). The prisoner in *McGirt* claimed that because he is Indian, the State of Oklahoma lacked authority to prosecute him for serious offenses he committed within the boundaries of the Muscogee (Creek) Nation Reservation. *McGirt*, 140 S. Ct. at 2459. The *McGirt* Court held that because Congress did not disestablish the Muscogee (Creek) Nation Reservation the land within the historical boundaries of that reservation is "Indian country," as defined in 18 U.S.C. § 1151(a), and, as a result, the federal government has exclusive jurisdiction, under 18 U.S.C. § 1153, to prosecute Indians for committing certain crimes within the boundaries of that reservation. *McGirt*, 140 S. Ct. at 2468, 2479-80. Relying on *McGirt*, the Supreme Court in *Murphy* summarily affirmed the United States Court of Appeals for the Tenth Circuit's 2017 decision that had reached the same

conclusions regarding the continued existence of the Muscogee (Creek) Nation Reservation and the exclusivity of federal jurisdiction as to certain crimes committed within that reservation by Indians. *Murphy*, 140 S. Ct. at 2412. Neither case, however, addressed whether Congress had or had not disestablished the Cherokee Nation Reservation. *See, e.g.*, *McGirt*, 140 S. Ct. at 2479 ("Each tribe's treaties must be considered on their own terms, and the only question before us concerns the Creek.").

In October 2020, the Supreme Court granted Wilson's petition for writ of certiorari, vacated the OCCA's judgment affirming the dismissal of Wilson's first application for postconviction relief, and remanded Wilson's case to the OCCA for further consideration in light of *McGirt*. Dkt. No. 13-9 at 2.

In March 2021, the OCCA held, in a different case, that Congress did not disestablish the Cherokee Nation Reservation. *Hogner v. State*, 500 P.3d 629, 635 (Okla. Crim. App. 2021). Later that same month, Wilson filed an "Application for Writ of Mandamus" in both the Tulsa County District Court and the OCCA (Case No. MA-2021-239), alleging that the OCCA had remanded his first application for postconviction relief back to the state district court for further proceedings in light of *McGirt*, and that the state district court had failed to issue a ruling within 180 days of the remand. Dkt. No. 13-16; Dkt. No. 13-17.[3]

In April 2021, the state district court construed Wilson's mandamus application as a "third Application for Post-conviction Relief . . . advising that the District Court had failed to hold an evidentiary hearing or render judgment on" the Indian country jurisdiction claim that the Supreme

---

[3] As Respondent notes, the docket sheet in OCCA Case No. PC-2019-670 does not contain any entries showing that the OCCA remanded Wilson's first application for postconviction relief to the state district court after the Supreme Court granted his petition for writ of certiorari, vacated the OCCA's decision affirming the dismissal of his first application, and remanded the case to the OCCA. Dkt. No. 13, at 6; Dkt. No. 13-18.

Court had remanded to the OCCA for further consideration.  Dkt. No. 13-20, at 4.  The state district court then made several factual findings relevant to that claim.  The state district court found that: (1) Wilson "was not an enrolled 'Freedman Citizen' of the Cherokee Nation on September 11, 2016, the date of the offense" and that he became an enrolled Cherokee Nation citizen on September 25, 2018; (2) Wilson "possesses 0/0 quantum of Indian blood"; (3) the Cherokee Nation is a federally recognized tribe; and (4) Wilson committed his crimes of conviction within Tulsa County and within the boundaries of the Muscogee Creek Nation and/or the Cherokee Nation.  *Id.* at 4.  Based on these findings, the state district court concluded (for a second time) that Wilson is not an Indian for purposes of federal law.  *Id.* at 4-7.  In addition, the state district court concluded that Wilson did not establish the Indian status of the murder victim.  *Id.* at 7-8.  The state district court thus denied Wilson's request for postconviction relief as to the Indian country jurisdiction claim, as that claim was raised in his first application for postconviction relief.

Four months later, the OCCA issued a decision in a different case reaffirming its post-*McGirt* decisions recognizing the existence of the Cherokee Nation Reservation, as well as other reservations, but held "that *McGirt* and [the OCCA's] post-*McGirt* decisions recognizing these reservations shall not apply retroactively to void a conviction that was final when *McGirt* was decided." *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 689 (Okla. Crim. App. 2021) ("*Wallace*"). In October 2021, the OCCA relied on *Wallace* to reject Wilson's Indian country jurisdiction claim, as that claim was asserted in his first application for postconviction relief, reasoning that Wilson's conviction was final before *McGirt* was decided.  Dkt. No. 13-12.

Wilson then filed the Petition, identifying what he characterizes as two claims:  (1) "[t]he trial court lacked jurisdiction because of treaty provisions between [the] Cherokee Nation and the United States"; and (2) "[t]he OCCA decision [in *Wallace*] to disallow post-conviction relief for

cases where the conviction was final is unconstitutional." Dkt. No. 1 at 5, 7.  Respondent filed a Response to Petition for Writ of Habeas Corpus on January 31, 2022, urging the Court to deny the Petition, and provided the record of state court proceedings.  Dkt. No. 13; Dkt. No. 14; Dkt. No. 15.  Wilson filed a Reply to Respondent's Response to Petition for Writ of Habeas Corpus on February 17, 2022.  Dkt. No. 16.  At that point, the Petition was ripe for adjudication.  Over one year later, Wilson filed the Motion seeking leave to amend the Petition to add new factual allegations to support his claim that he is Indian, requesting appointment of counsel, and requesting an evidentiary hearing.  Dkt. No. 18.  Respondent filed a Response in Opposition to Motion to Supplement/Amend Habeas Corpus 2254 [and] Motion for Counsel on April 26, 2023.  Dkt. No. 19.

## DISCUSSION

A federal court may grant federal habeas relief to a state prisoner only if that prisoner shows that he or she "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  "To ensure that federal habeas corpus retains its narrow role, [the Antiterrorism and Effective Death Penalty Act ("AEDPA")] imposes several limits on habeas relief, and [the United States Supreme Court] ha[s] prescribed several more." *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022).  "And even if a prisoner overcomes all of these limits, he is never entitled to habeas relief.  He must still 'persuade a federal habeas court that law and justice require [it]." *Id.* (alteration in original) (quoting *Brown v. Davenport*, 596 U.S. 118, 134 (2022)).  Having reviewed the record of state-court proceedings, the parties' arguments, and applicable law, the Court finds and concludes that that law and justice do not require habeas relief.

Although Wilson identifies two claims in the Petition, both rest on the premise that he is in state custody in violation of federal law because:  (1) he is Indian, specifically, " a descendant and

7

enrolled freedman of Cherokee Nation;" (2) he committed murder in Indian country; and (3) the

federal government had exclusive jurisdiction to prosecute him for murder under the Major Crimes

Act.[4]   Dkt. 1 at 5.   Wilson's claim challenging the trial court's alleged lack of jurisdiction is

cognizable on federal habeas review because it implicates Wilson's Fourteenth Amendment right

to due process.  *See Yellowbear v. Wyo. Att'y Gen.*, 525 F.3d 921, 924 (10th Cir. 2008) ("Absence

of jurisdiction in the convicting court is indeed a basis for federal habeas corpus relief cognizable

under the due process clause.").[5]

Respondent urges this Court to deny claim one for three reasons.[6]  First, Respondent argues

---

[4] Wilson does not mention the Major Crimes Act or *McGirt* in his Petition.  Dkt. No. 1, generally. In his reply brief, Wilson asserts that his Indian country jurisdiction claim relies on the fact that he is "a tribal member subject to Cherokee/US treaties, and therefore entitled to relief pursuant to said treaties."  Dkt. No. 16 at 2-3.  But, after discussing several treaties and suggesting that only the Cherokee Nation—not the State—can prosecute him for crimes in Indian country, Wilson argues that the federal government had exclusive jurisdiction to prosecute him under the Major Crimes Act.  *Id.* at 4-5.  Likewise, the claim Wilson presented in state court, through his first application for postconviction relief, mentioned treaty provisions but primarily asserted that the Major Crimes Act provides the federal government with exclusive jurisdiction to prosecute Indians for certain crimes committed in Indian country.  Dkt. No. 13-4 at 2-3.  Because Wilson appears without counsel, the Court liberally construes the Petition as raising the same claim Wilson presented in state court through his first application for postconviction relief.

[5] Wilson's second claim, asserts that the "the OCCA decision to disallow post-conviction relief for cases where the conviction was final is unconstitutional." Dkt. No. 1 at 7.  In support of this claim, Wilson states: "In *Matloff v. Wallace*, 2021 OK CR 23, the OCCA held that the Oklahoma post-conviction procedures may not be applied to conviction[s] that are final.  Petitioner exhausted his direct appeal process in 2019."  *Id.*  To the extent Wilson raises claim two as a claim that is independent from the Indian country jurisdiction claim asserted in claim one, Wilson fails to state a cognizable federal habeas claim because the OCCA's alleged constitutional error in applying *Wallace* to deny his request for postconviction relief "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration." *Sellers v. Ward*, 135 F.3d 1333, 1335 (10th Cir. 1998).  For that reason, the Court DENIES the Petition as to claim two.

[6] Respondent concedes, and the record shows, that Wilson exhausted available state remedies as to the Indian country jurisdiction claim asserted in claim one.  Dkt. No. 13 at 2-7; *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state remedies); *Grant v. Royal*, 886 F.3d 874, 890-91 (10th Cir. 2018) (discussing circumstances that satisfy the exhaustion rule).

that the OCCA's decision applying *Wallace* to reject the Indian country jurisdiction claim erects a procedural bar that precludes habeas relief.  Dkt. No. 13 at 25-47.  Second, Respondent argues that, to the extent the OCCA rejected Wilson's claim on the merits, 28 U.S.C. § 2254(d) bars relief.[7]  *Id.* at 48-64.  Third, Respondent argues that Wilson's claim fails on de novo review because Wilson "is not Indian for purposes of federal law."  *Id.* at 64-66.

On the record presented, the Court finds it necessary to address only the third argument.  It is well-established that federal habeas courts have discretion to "bypass [any] procedural issues" when a claim "is readily resolved on the merits."  *Smith v. Duckworth*, 824 F.3d 1233, 1242 (10th Cir. 2016); *see also Revilla v. Gibson*, 283 F.3d 1203, 1210-11 (10th Cir. 2002) (noting that when a habeas claim "may be disposed of in straightforward fashion on substantive grounds," a federal court may "invoke [its] discretion to bypass complex issues of exhaustion and procedural bar to reject the claim on the merits" (internal citations omitted)).  Exercising that discretion here, the Court finds that the primary obstacle precluding relief as to claim one is that the state district court twice found that Wilson is not Indian for purposes of federal law.  As the state district court explained, a person is Indian for purposes of federal law when the person establishes that he or she:  (1) "has some Indian blood"; and (2) "is recognized as an Indian by a tribe or by the federal government."  *Prentiss*, 273 F.3d at 1280 (citations and internal quotation marks omitted).  The state district court found, based on the evidence presented in state court, that Wilson has no degree of Indian blood and that he was not recognized as an Indian by a tribe or by the federal government

---

[7]  Section 2254(d) precludes relief on a claim adjudicated on the merits in state court unless the petitioner shows that the state court's adjudication of that claim either:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

until 2018, over two years after he murdered Smith in 2016.  Dkt. No. 13-20 at 4; *see, e.g., United States v. Zepeda*, 792 F.3d 1103, 1113 (9th Cir. 2015) ("In a prosecution under the [Indian Major Crimes Act], the government must prove that the defendant was an Indian at the time of the offense with which the defendant is charged.").  As Respondent contends, the state district court's factual findings are presumptively correct and Wilson has not rebutted them with any clear and convincing evidence that he is, in fact, Indian for purposes of federal law.  Dkt. No. 13 at 64-66; *see* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Sumpter v. Kansas*, 61 F.4th 729, 750 (10th Cir. 2023) (explaining that whether a federal habeas claim is reviewed under 28 U.S.C. § 2254(d) or reviewed de novo, "state-court factfinding still receives the benefit of doubt under § 2254(e)(1)" (quoting *Fontenot v. Crow*, 4 F.4th 982, 1061 (10th Cir. 2021))).  Further, the state district court's findings have ample support in the record because the evidence presented in state court shows that Wilson possesses "0/0 Blood Quantum" and that he became citizen of the Cherokee Nation in September 2018, two years after he murdered Smith.  Dkt. No. 13-7 at 8; Dkt. No. 13-19 at 13.

To overcome the force of these factual findings, Wilson seeks leave to amend or supplement the Petition so that he may add new factual allegations (i.e., allegations he did not present in state court), asks this Court to hold an evidentiary hearing, and requests appointment of counsel.  Dkt. No. 18.  In his Motion, Wilson specifically alleges that his "father is 100% Cherokee/Freedman," that he has "at least 50% Indian blood," that he has "a CDIB card showing

[he is] Cherokee," and that his "blood has always been Indian." *Id.* at 1-2.[8]

Federal Rule of Civil Procedure 15 governs Wilson's request for leave to amend the Petition.  28 U.S.C. § 2242; *see also Mayle v. Felix*, 545 U.S. 644, 655-65 (2005) (discussing application of Rule 15 in habeas context); *Postelle v. Carpenter*, 901 F.3d 1202, 1225 (10th Cir. 2018) (same).  Because Respondent filed a response to the Petition and opposes Wilson's request to amend the Petition, Wilson must obtain leave of Court to amend the Petition.  Fed. R. Civ. P. 15(a)(2).  Under Rule 15(a)(2), a "court should freely give leave" to amend "when justice so requires."  But a court may deny leave to amend if amendment would be futile.  *Pacheco v. Habti*, 62 F.4th 1233, 1240 (10th Cir. 2023).  The decision to hold an evidentiary hearing in a habeas proceeding generally is left to the district court's discretion, but that discretion is sharply limited by 28 U.S.C. § 2254(e)(2).  *Ramirez*, 596 U.S. at 381.  Similarly, the decision to appoint counsel in a habeas proceeding generally is left to the district court's discretion, but a court must appoint counsel if it determines that an evidentiary hearing is required.  *Swazo v. Wyo. Dep't of Corr. State Penitentiary Warden*, 23 F.3d 332, 333-34 (10th Cir. 1994).

---

[8] "Certificates of Degree of Indian Blood ("CDIBs") are issued by the [Bureau of Indian Affairs] and are the BIA's certification that an individual possesses a specific quantum of Indian blood." *Davis v. United States*, 192 F.3d 951, 956 (10th Cir. 1999).  Wilson did not submit a CDIB card or any other documentation with his Motion and, as previously discussed, the only document he submitted in state court was a tribal registration card showing that he is a citizen of the Cherokee Nation.  The evidence Wilson presented in state court appears consistent with his allegation that he is a descendant of a "Cherokee/Freedman." *See Cherokee Nation v. Nash*, 267 F. Supp. 3d 86, 140 (D. D.C. 2017) ("In accordance with Article 9 of the 1866 Treaty, the Cherokee Freedmen have a present right to citizenship in the Cherokee Nation that is coextensive with the rights of native Cherokees.").  But Wilson's tribal registration card establishing citizenship does not show that he possesses a quantum of Indian blood. *See Vann v. Kempthorne*, 534 F.3d 741, 744 (D. D.C. 2008) (discussing the Dawes Commission that was directed by Congress to "create membership rolls for . . . the Cherokee Nation" and stating, "[t]he rolls of the Cherokees were completed in 1907 and resulted in two lists:  a 'Blood Roll' for native Cherokees, and a 'Freedman Roll' for former slaves and their descendants").  And, in state court proceedings, the State presented evidence showing Wilson possesses no quantum of Indian blood.  Dkt. No. 13-19 at 13.

Respondent contends, and this Court agrees, that it would be futile to permit Wilson to amend the Petition to add new factual allegations to support his Indian country jurisdiction claim and, relatedly, that it would be inappropriate to hold an evidentiary hearing to allow Wilson to present new evidence as to that claim. As previously stated, in state court proceedings Wilson presented only a copy of his tribal registration card showing that he is a Cherokee Nation citizen to support his claim. And "only rarely may a federal habeas court . . . consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules." *Ramirez*, 596 U.S. at 375-76. The *Ramirez* Court explained that 28 U.S.C. § 2254(e)(2)

> provides that, if a prisoner "has failed to develop the factual basis of a claim in State court proceedings," a federal court may hold "an evidentiary hearing on the claim" in only two limited scenarios. Either the claim must rely on: (1) a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this Court; or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." §§ 2254(e)(2)(A)(i), (ii). If a prisoner can satisfy either of these exceptions, he also must show that further factfinding would demonstrate, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of the crime charged. § 2254(e)(2)(B). Finally, even if all of these requirements are satisfied, a federal habeas court still is not required to hold a hearing or take any evidence. Like the decision to grant habeas relief itself, the decision to permit new evidence must be informed by principles of comity and finality that govern every federal habeas case.

*Ramirez*, 596 at 381-82.

In this case, amendment would be futile, and it would be inappropriate to hold an evidentiary hearing, for two reasons. First, even though this Court has chosen to bypass potential procedural bars and to review Wilson's Indian country jurisdiction claim de novo, rather than under § 2254(d), 28 U.S.C. § 2254(e)(2) "still restricts the discretion of [this Court] to consider new evidence." *Cullen v. Pinholster*, 563 U.S. 170, 186.; *Ramirez*, 596 U.S. at 375-76, 381-82. And, even accepting as true Wilson's unsworn factual allegations presented in his Motion, Wilson cannot make the showings necessary to obtain an evidentiary hearing under § 2254(e)(2). Nothing in the Motion suggests that Wilson could not have previously discovered, with due diligence, that

he allegedly has fifty percent Indian blood or that his father allegedly is one hundred percent

Cherokee. Second, even if it were appropriate for this Court to consider Wilson's new, unsworn

factual allegations as evidence, those allegations are wholly insufficient to rebut the presumed

correctness the state district court's factual findings that are grounded in documentary evidence

that was submitted in state court. For these reasons, the Court concludes that it would be futile to

grant Wilson leave to amend the Petition to add the unsworn factual allegations, that it would be

contrary to § 2254(e)(2) to hold a hearing and receive evidence that Wilson failed to develop in

state court, and that it is unnecessary to appoint counsel in this matter. The Court therefore

DENIES the Motion.

Further, because the factual record that Wilson did develop in state court shows that he is

not Indian for purposes of federal law, the Court finds and concludes that he has not shown that he

is in state custody in violation of federal law, as required to obtain relief under § 2254(a). The

Court therefore DENIES the Petition. Because reasonable jurists would not debate this Court's

resolution of the Petition or conclude that Wilson has made "a substantial showing of the denial

of a constitutional right," the Court also DENIES a certificate of appealability. *See* 28 U.S.C. §

2253; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

IT IS THEREFORE ORDERED that: (1) the Motion to Supplement/Amend Habeas

Corpus 2254 [and] Motion for Counsel filed April 5, 2023 [Dkt. No. 18] is DENIED; (2) the

Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed

October 14, 2021 [Dkt. No. 1] is DENIED; (3) a certificate of appealability is DENIED; and (4) a

separate judgment shall be entered in this matter.

IT IS FURTHER ORDERED that the Clerk of Court shall note on the record the

substitution of Carrie Bridges, Warden, in place of Scott Nunn as party Respondent.

Dated this 13th day of February, 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE